STATE of Minnesota, Respondent,

v.

Earl Edwin GARDNER, Appellant.

No. 81–1314.

Supreme Court of Minnesota.

Jan. 7, 1983.

C. Paul Jones, Public Defender, and Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Julius Gernes, County Atty., Winona, for respondent.

SCOTT, Justice.

Defendant was found guilty by a district court jury of criminal sexual conduct in the first degree pursuant to Minn.Stat. § 609.-342(e)(i) (1980) (causing personal injury while using force or coercion to accomplish sexual penetration). The presumptive sentence for criminal sexual conduct in the first degree (severity level VIII) by a person with defendant's criminal history score (2) is 65 (60–70) months in prison. The trial court sentenced defendant to 144 months in prison. On appeal from judgment of conviction, defendant alternatively seeks (1) an outright reversal of his conviction on the ground that the evidence of his guilt was legally insufficient, (2) a new trial on the ground that the trial court prejudicially erred in a number of its evidentiary rulings, or (3) a reduction in sentence. We affirm defendant's conviction but reduce defendant's sentence to 70 months, the maximum permitted by the Sentencing Guidelines without departure.

1. There is no merit to defendant's contention that the evidence of his guilt was legally insufficient. The victim, who knew defendant, promptly reported the offense, and her positive testimony was not significantly impeached. We stated in *State v. Ani,* 257 N.W.2d 699 (Minn.1977), that although Minn.Stat. § 609.347, subd. 1 (1980) does not require corroboration in such cases, there may be cases in which the evidence would be insufficient absent corroboration. Here we need not decide whether the evidence would have been sufficient absent corroboration, because there was strong evidence corroborating the victim's testimony.

2. Defendant makes a number of arguments in support of his contention that he was denied a fair trial and that therefore a new trial is required.

(a) He makes three related arguments concerning the admissibility of evidence of prior misconduct by defendant.

■ (i) First, he argues that the trial court prejudicially erred in admitting *Spreigl* evidence that ten months earlier defendant broke into the apartment of the victim's sister, defendant's former girl friend, who was asleep at the time, and that he was apparently preparing to sexually assault her before he was forced to flee by the entry of another person into the apartment. We hold that the trial court properly admitted this evidence as relevant evidence illuminating defendant's relationship with the victim's family and helping to establish that defendant was not above stealing sex from the victim. *State v. Blanchard,* 315 N.W.2d 427 (Minn.1982); *State v. Moyer,* 298 N.W.2d 768 (Minn.1980); *State v. Volstad,* 287 N.W.2d 660 (Minn.1980).

■ (ii) Second, defendant argues that the trial court prejudicially erred in ruling that defendant's credibility could be impeached by his conviction in 1980 of criminal damage to property. Our examination of the relevant facts satisfies us that the trial court did not prejudicially err in this ruling. *State v. Bettin,* 295 N.W.2d 542 (Minn.1980), *State v. Brouillette,* 286 N.W.2d 702 (Minn.1979). The conviction was a recent one, defendant's credibility was a key issue in the case, the evidence did not have the effect of keeping defendant's testimony from the jury, and the conviction was not for the same offense as that with which defendant was charged (a fact that sometimes argues for exclusion).

[4] (iii) Defendant's other related contention is that the trial court prejudicially erred in failing to declare a mistrial when the prosecutor, during its case-in-chief, elicited evidence concerning the facts underlying the criminal damage to property conviction. It is true that normally a prosecutor may not elicit evidence concerning the facts

underlying a prior conviction used to impeach a defendant's credibility. It is also true that normally the prosecutor must wait until the defendant testifies before he elicits the fact of the prior conviction. Here, however, the defense counsel, during cross examination of the victim's sister—defendant's former girl friend and the intended victim of the *Spreigl* offense—expanded the subject of her stormy relationship with defendant by questioning her about an incident in which she physically attacked defendant. As a result, we conclude that the prosecutor was justified in eliciting the evidence in question, which helped explain why she attacked defendant. It is also arguable that the evidence would have been admissible as *Spreigl* evidence, assuming proper procedures had been followed, even if defense counsel had not "opened the door." In any event, even if we were to assume that elicitation of the evidence was improper, any error was harmless, given the trial court's cautionary instruction and the other clearly properly admitted evidence concerning defendant's harassment of the victim's family.

■ (b) Defendant's only other claim of trial error relates to the trial court's allowing the prosecutor to call a sheriff's investigator as a rebuttal witness and have her read to the jury the formal statement the victim gave a day and a half after the assault. Contrary to what defendant argues, the evidence was admissible, both under Minn.R.Evid. 801(d)(1)(B) and under cases of this court upholding admission of the contents of the victim's statement to police and others for the purpose of corroborating her testimony. *See for example State v. Kruse,* 302 N.W.2d 29 (Minn.1981), and *State v. Hesse,* 281 N.W.2d 491 (Minn. 1979). The trial court has broad discretion in deciding whether to admit evidence to rebut the defendant's case-in-chief and we do not believe that the trial court abused that discretion in this case. In any event, even if there was error it was harmless, given the fact that the evidence was merely cumulative, the jury having heard numerous witnesses testify during the state's

case-in-chief concerning the contents of the victim's statements.

3. Defendant's final contention is that the trial court erred in departing from the presumptive sentence of 65 (60–70) months by sentencing him to a 144 month prison term.

The trial court based its decision to depart durationally on (a) his belief that the victim was particularly vulnerable due to a reduced physical capacity and that she is an epileptic and defendant knew this, (b) his belief that defendant committed the crime in a particularly cruel way, causing numerous minor injuries, and (c) the fact that defendant has a serious chemical dependency problem and is potentially dangerous.

There was evidence that the victim is an epileptic and that at one point during the assault she feared that she might be getting an epileptic seizure. However, there is no basis for concluding that this was a substantial factor in defendant's accomplishing sexual penetration. Significantly, the prosecutor charged defendant alternatively with six different counts of criminal sexual conduct but not one of these was based on the theory that the victim was physically incapacitated as a result of her condition. *See* Minn.Stat. § 609.342(e)(ii) (1980).

 Although the victim suffered a number of minor personal injuries during the assault, those injuries were relied upon by the jury as the basis for finding defendant guilty of criminal sexual conduct in the first degree under Minn.Stat. § 609.342(e)(i) (1980) (causing personal injury while using force or coercion to accomplish sexual penetration). Under the circumstances of this case, the personal injury cannot be used again as a basis for a durational departure.

Defendant's chemical dependency problem and his dangerousness are not the sort of factors which can be relied upon as justifying a durational departure. *State v. Hagen*, 317 N.W.2d 701 (Minn.1982).

In conclusion, we do not believe that the factors relied upon by the trial court justify the durational departure. There do not appear to be any other factors which would support the departure. Accordingly, defendant's sentence must be reduced to 70 months, which is the maximum sentence permitted for this offense by a person with defendant's criminal history score without departure.

Affirmed as modified.

KELLEY, J., took no part in the consideration or decision of this case.