*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2028**

State of Minnesota,
Respondent,

vs.

Lawrence Lee Hicks,
Appellant.

**Filed December 5, 2016
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR15594

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sean M. McGuire, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellant argues that the district court abused its discretion when it imposed an upward durational sentencing departure based on Minn. Stat. § 244.10, subd. 5a(a)(3),

(2014), particular cruelty, and particular vulnerability. Because we conclude that the district court did not abuse its discretion in relying on the statute, we affirm.

**FACTS**

On November 4, 2014, appellant Lawrence Hicks and Y.D. were involved in an argument. During the dispute, Y.D. pulled out a knife. Appellant struck Y.D., and she fell to the ground. Appellant then obtained the knife and stabbed Y.D. in the back two times while she was on the ground and very close to the inside corner of a building where the entryway door meets a wall. The stabbing left Y.D. permanently paralyzed from the waist down. During the incident, appellant attempted to cut Y.D.'s hair, which is a sacred act in Y.D.'s Native-American culture. After the stabbing, appellant offered no assistance to Y.D. and fled the scene.

The state charged appellant with first-degree assault—great bodily harm, under Minn. Stat. § 609.211, subd. 1, (2014). In an amended notice of intent to seek an upward durational sentencing departure, the state requested that the district court impose a statutory maximum sentence of 240 months upon conviction, asserting four aggravating factors: (1) the current offense caused injury to the victim and appellant has a prior felony conviction in which the victim was otherwise injured, under Minn. Stat. § 244.10, subd. 5a(a)(3); (2) particular cruelty; (3) particular vulnerability of the victim; and (4) appellant attempted to avoid apprehension and divert the police investigation. The district court

issued a *Blakely* order and memorandum,[1] authorizing the state to present facts referencing the first three aggravating factors included in its amended notice of intent as well as facts referencing appellant's flight from the scene.

At an omnibus pretrial hearing, appellant pleaded guilty to the first-degree assault charge and waived his right to have a jury find the aggravating factors. However, the district court later allowed appellant to withdraw his guilty plea and *Blakely* waiver, which he did, due to the release of the presentence investigation report (PSI). The PSI recommended a minimum of a top-of-the-box sentence of 192 months but noted that the record supports the state's request for a 240-month sentence.

After jury selection, appellant again pleaded guilty and waived his right to have the jury determine the existence of the aggravating factors. Appellant admitted to facts supporting certain aggravating factors. First, appellant admitted that he has a prior felony conviction in which Y.D. was injured. He also admitted that it is a particularly cruel act to attempt to cut Y.D.'s hair. Next, appellant admitted to stabbing Y.D. twice in the back while she was on the ground in a corner between the wall and door of a building. Finally, he admitted to fleeing the scene without offering aid to Y.D.

The district court sentenced appellant to 228 months in prison, an upward durational departure of 67 months above the 161-month presumptive sentence and less than the 240-month statutory maximum sentence. The aggravating factors the district

---

[1] Under *Blakely v. Washington*, when imposing an upward durational departure, a district court may only rely on facts found by a jury or admitted by the defendant, unless the fact is of a prior conviction. 542 U.S. 296, 303-04, 124 S. Ct. 2531, 2537 (2004).

3

court relied upon include that appellant was convicted of a prior felony in which the victim was otherwise injured, the particular cruelty of attempting to cut Y.D.'s hair during the current offense, and Y.D.'s particular vulnerability both during and after the offense. This appeal follows.

## D E C I S I O N

A district court may depart from the presumptive sentencing guidelines when the record contains "substantial and compelling circumstances" for the departure. *State v. Misquadance*, 644 N.W.2d 65, 68–69 (Minn. 2002). Substantial and compelling circumstances include those that indicate the defendant's conduct was significantly more serious than conduct typically involved in the commission of the crime. *State v. Hicks*, 864 N.W.2d 153, 157 (Minn. 2015). The sentencing guidelines provide "a nonexclusive list of factors that may be used as reasons for departure." Minn. Sent. Guidelines 2.D.3 (2014). A jury must find or the defendant must admit to the facts underlying the departure. *State v. Stanke*, 764 N.W.2d 824, 828 (Minn. 2009).

We review a district court's departure from the sentencing guidelines for an abuse of discretion. *Hicks*, 864 N.W.2d at 156. A district court abuses its discretion when its reasons for departure are "improper or inadequate." *Id.* We give great deference to district courts for durational departures of up to twice the presumptive sentence. *Dillon v. State*, 781 N.W.2d 588, 596 (Minn. App. 2010) (citing *State v. Thompson*, 720 N.W.2d 820, 831 n.4 (Minn. 2006)), *review denied* (Minn. July 20, 2010). "The shorter the departure, the greater the deference." *Id.*

4

The district court first found that an upward durational departure was warranted because "the current conviction is for . . . an offense in which the victim was otherwise injured and there is a prior felony conviction for . . . an offense in which the victim was otherwise injured." Minn. Stat. § 244.10, subd. 5a(a)(3). The prior conviction upon which the state relied is appellant's prior felony terroristic-threats conviction in which the victim was otherwise injured.

Appellant argues that the statute requires a prior felony conviction involving injury to the victim, in contrast to "a prior victim-injury incident" of which victim injury was not an element of the offense. In support of his argument, appellant asserts that the state's reliance on *State v. Stauffacher*, 380 N.W.2d 843 (Minn. App. 1986), *review denied* (Minn. Mar. 21, 1986), and *State v. Peake*, 366 N.W.2d 299 (Minn. 1985), is misguided because, in both cases, victim injury was an element of the prior felony conviction. Appellant also asserts that to interpret the statute as requiring only a victim-injury incident would go against *State v. Meyers*, which requires "a prior conviction for a specified offense." 869 N.W.2d 893, 899 (Minn. 2015). We are not persuaded.

The plain language of the statute and caselaw interpreting it do not require victim injury as an element of the prior felony conviction. The statute states that a district court may depart from the sentencing guidelines where, in both the current and prior felony conviction, the victim was *otherwise* injured. The statute does not indicate that victim injury is a required element of the prior felony conviction. Thus, the statute includes prior felony convictions in which victim injury both was and was not an element of the charge.

5

Caselaw interpreting the statute supports a broad reading of the "in which the victim was otherwise injured" language. In *Stauffacher*, this court noted that "a departure is proper where appellant has a prior felony conviction in which the victim was injured regardless of whether injury to the victim was an element of either crime." 380 N.W.2d at 850 (citing *Peake*, 366 N.W.2d at 301). Additionally, in *Peake*, Peake argued that a district court cannot use past violence as an aggravating factor when violence is an element of the prior and current offenses. 366 N.W.2d at 301. The supreme court rejected Peake's argument because "[u]se of past injury to a victim would then be limited to violence used in crimes where violence is not an element of the crime." *Id.* Adopting appellant's interpretation of *Stauffacher* and *Peake* would ignore the fact that both cases consider the use of a prior felony conviction for which victim injury is not an element valid under the statute.

Further, interpreting the statute as requiring only a prior victim-injury incident would not go against *Meyers* because *Meyers* does not indicate that the statute requires a specialized type of offense in the way appellant argues. Rather, *Meyers* states that the necessary "specified offense" is "one involving victim injury," which is consistent with the statute. 869 N.W.2d at 899.

The district court did not abuse its discretion by imposing an upward durational departure because the statute does not require victim injury as an element of the current or prior felony conviction. Because a district court may use a single aggravating factor to support an upward durational departure, we need not address appellant's arguments

6

against the district court's reliance on particular cruelty and particular vulnerability.[2]

*Dillon*, 781 N.W.2d at 599 ("Even a single aggravating factor may justify a departure.");

*Peake*, 366 N.W.2d at 301 ("[W]here past crimes are violent and the present crime is a

continuation of the violence, departure is permissible under the guidelines.").

**Affirmed.**

---

[2] We note that particular vulnerability is also present in this case. A district court may impose an upward durational departure where "the victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity, which was known or should have been known to the offender." Minn. Stat. § 244.10, subd. 5a(a)(1) (2014). Particular vulnerability arises when the victim's vulnerable state makes an assault "more effective." *Dillon*, 781 N.W.2d at 600. Here, appellant stabbed Y.D. after he struck her and she fell to the ground. When appellant stabbed Y.D., her back was facing him and she was positioned in a corner of a building. Therefore, Y.D. was particularly vulnerable due to her known position when appellant stabbed her.